**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0927n.06

No.  13-5221

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 29, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| Gaylus Bailey, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Real Time Staffing Services, Inc., dba Select | ) | WESTERN DISTRICT OF TENNESSEE |
| Staffing, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before:      MERRITT and CLAY, Circuit Judges, and STAFFORD, District Judge[*].

**MERRITT, Circuit Judge**.  Plaintiff Gaylus Bailey appeals from summary judgment in favor of defendant Real Time Staffing Services on his claim that Real Time violated the Americans with Disabilities Act ("ADA") by firing him.  For the following reasons, the judgment of the district court is affirmed.

**I.  Background**

Real Time is a temp agency that employed Bailey for a period of several years.  The agency assigned Bailey to a pet store that required random drug tests.  Bailey was administered a drug test that returned positive for marijuana.  The same day he learned of the positive test, Bailey obtained

---

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

a note from his doctor explaining that Bailey "is prescribed a medication that may cause a positive drug screen." Bailey took this note to Real Time intending to give it to Peggy Sue Franklin, his supervisor. Franklin was away, so he left it with someone else at the office. When Franklin returned, a Real Time employee gave her the letter and informed her that Bailey had a medical issue that caused the false positive, though the employee incorrectly characterized it as a kidney problem. In fact, Bailey has HIV. According to Bailey, he never specified the nature of his problem to anyone at Real Time and reported only that he had a "medical condition." No one disputes that Bailey claimed a general medical condition as the reason for the positive test.

Under Real Time's drug-testing protocol, materials from a positive drug test are sent to a medical review officer for further analysis. Bailey expected to hear from the medical review officer within 72 hours but never received a call. Four days after the positive test, he obtained another doctor's note—this one stating that he "has been prescribed a medication that may result in a false positive for marijuana on a urine drug screen"—and brought it to Franklin. Neither this note nor the previous note specified that Bailey's medicine was meant to treat HIV. Franklin told him he needed to give the information to the medical review officer.

Eventually Bailey decided to call the medical review officer himself and reached a person whom Bailey characterizes as a "receptionist" and whom Real Time characterizes as a "representative." The receptionist/representative asked for the name of the medication, which Bailey could not remember. When Bailey told the receptionist/representative about the doctor's notes, she said, "Whatever disposition they told you, that's what it is." This call ended Bailey's

attempts to clear himself. After Franklin consulted with the medical review officer, Real Time fired Bailey, pursuant to company policy, for failing a drug test.

The parties do not dispute the above factual account. However, they contest several details of the interaction between Bailey, Franklin, and the medical review officer. According to Franklin, the medical review officer asked Bailey about the positive drug test, but Bailey reported no medication. According to Bailey, he never spoke to the medical review officer at all, only the receptionist/representative. There is a document in the record from the medical review company stating that Bailey declined to talk to a medical review officer. Bailey says this is false. The parties also contest whether Franklin ever looked at the doctor's notes.

Bailey brought the instant suit for ADA discrimination, and Real Time moved for summary judgment. The district court granted the motion in part and denied it in part. The court construed the papers to allege discrimination on the basis of three different disabilities: HIV, kidney illness, and drug use. The court held that Real Time did not discriminate on the basis of HIV because it neither knew nor had reason to know Bailey was HIV positive. It also held that no reasonable jury could find that Real Time discriminated against Bailey because of a perceived kidney condition. However, the court ordered a trial on the question of whether Real Time discriminated against Bailey because it perceived his drug use to cause him an impairment.

Bailey informed the court that it had misconstrued his allegations. His argument was not that illegal drug use rendered him impaired, or even that Real Time fired him because of HIV or kidney illness, but rather that Real Time fired him for "manifestation of a disability"—namely, a false positive on a drug test. *See* R. 1, Compl. ¶ 25, at 4 ("The false positive is a clear manifestation of

Plaintiff's disability and the mitigating measure of medications taken for his disability. By terminating Plaintiff for a manifestation of his disability, Defendant has violated the [ADA]."). Faced with this clarification, the district court granted summary judgment to Real Time in full. The court summarily dismissed Bailey's "manifestation of a disability" argument, stating that it was "not prepared to find that terminating an employee who takes prescription medicine and failed a drug test is a violation of the [ADA]." R. 55, Order at 14. The district court also held that, even if Bailey could make out a prima facie case of discrimination, the positive drug test was a legitimate, nonpretextual reason for the firing. This appeal followed.

## II. Analysis

We review a grant of summary judgment *de novo*. *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). Summary judgment is appropriate if there is no genuine dispute as to any material fact and if the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A successful showing of discriminatory discharge under the ADA requires proof of three elements: 1) that the plaintiff was "disabled"; 2) that the plaintiff is qualified and able to perform the essential functions of the job; and 3) that the employer terminated the defendant because of the disability. *See Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998). The parties agree that Bailey is qualified and able to perform his job, so only the first and third elements are at issue here.

Bailey spends significant effort attempting to establish that he is disabled under recent amendments to the ADA because he was "regarded as having [] an impairment." 42 U.S.C. § 12102(1)(c). The Supreme Court formerly interpreted the ADA to state that a person is disabled only if she actually has or is regarded as having an impairment that substantially limits one or more

major life activities. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489-90 (1999). In 2008, Congress broadened the class of ADA-eligible persons by amending the law to provide that a person is regarded as disabled if she has an "actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Even under the relaxed standard of the 2008 amendment, we have some doubt that a plaintiff who merely informs his employer of an unspecified "medical condition" can prove that he has a perceived "impairment" and is thus "disabled." However, we need not resolve this question because there is no set of facts on this record that would allow a jury to find causation.

In order to make a successful ADA claim, the plaintiff must show that the defendant took an adverse action against him "on the basis of disability." 42 U.S.C. § 12112(a). In the Sixth Circuit, this language requires the plaintiff to show that his disability was a but-for cause of the adverse action. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc). Plaintiffs lacking direct evidence of the defendant's discriminatory motive must show causation through the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The initial burden is on the plaintiff to make out a prima facie case, which under the ADA requires a showing that 1) the plaintiff was protected under the ADA; 2) the defendant knew the plaintiff was protected; 3) the defendant took an adverse action against the plaintiff; and 4) there was a causal connection between the adverse action and the plaintiff's protected status. *See A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013). If the plaintiff can make out this prima facie case, the defendant must show that it had a legitimate, non-discriminatory

reason for the adverse action. The burden then shifts back to the plaintiff to show that the proffered legitimate reason was a pretext for discrimination. *Id.*

Bailey argues that we need not employ the *McDonnell Douglas* standard because there is direct evidence of discrimination—Real Time firing him for "manifestation of a disability." This theory follows a framework established by the Second Circuit in *Teahan v. Metro-North Commuter Railroad Co.*, 951 F.2d 511 (2d Cir. 1991). According to this framework, a plaintiff in an ADA suit can prove causation by showing the defendant fired her for conduct that resulted from a disability. *See id* at 515-17. Say, for example, that a employee falls asleep at work because of a disability. Assuming this action does not render the employee unqualified to perform her job and the employer knows of the connection between the employee's sleeping and the disability, an employer cannot avoid a charge of discrimination by claiming that it fired the employee because she fell asleep.

Bailey argues that, under this framework, his false positive drug test was a manifestation of HIV for which he cannot be fired. We think Bailey is trying to fit a square peg into a round hole. Bailey was not fired for "conduct" in the usual sense—he was fired for failing a drug test. The ADA allows employers to perform drug testing. *See* 42 U.S.C. § 12114. Moreover, Bailey's argument assumes facts with little support in the record—namely, that the drug test was actually false and that Real Time knew it was false. If Bailey is to prove causation, he must do so through the traditional *McDonnell Douglas* standard.

Applying that standard, it is apparent that Bailey cannot overcome Real Time's proffered legitimate reason for firing him—failure of a screen for illegal drugs. Real Time could not have fired Bailey because of his HIV because it simply did not know he had HIV. Nor are there facts in

the record to suggest Real Time fired him for some unspecified, perceived impairment rather than the positive drug test. Though the doctor's note said Bailey was taking some sort of medication that perhaps could cause a positive drug screen, this medication might have been Tylenol for all Real Time knew. The note gave Real Time no information that could motivate a discriminatory firing.

Furthermore, though there is some factual dispute regarding Bailey's interactions with the medical review officer, no evidence suggests that Real Time acted in bad faith or had any reason other than the drug test to fire Bailey. Bailey cannot show pretext if Real Time had an honest belief that he used illegal drugs—that is, if it made a reasonably informed decision before firing Bailey and if its deliberation was not marred by "an error too obvious to be unintentional." *See A.C. ex rel. J.C.*, 711 F.3d at 705. It is not clear that there was an error in the drug test at all, and Real Time went through a reasoned process by consulting with its medical review officer. Real Time had to decide whether to credit Bailey's story or to credit the medical review officer's. Its decision to credit the medical review officer's does not support an inference of discriminatory animus. Even if the positive result was in fact false, an employer's reliance on an erroneous result does not create a claim under the ADA absent an independent showing that the real reason for the firing was a disability.

### III. Conclusion

Bailey cannot show that Real Time fired him because of a disability. Accordingly, the judgment of the district court is affirmed.