NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0048n.06

**Case No. 15-3550**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jan 26, 2016

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DAVID NEELY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| BENCHMARK FAMILY SERVICES, | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellee. | ) | |

**O P I N I O N**

**BEFORE: MERRITT, GIBBONS, and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** David Neely appeals from the district court's grant of summary judgment to defendant Benchmark Financial Services on his state and federal disability discrimination and retaliation claims, as well as a state law claim for intentional infliction of emotional distress. Because Neely has neither shown that he is qualified as disabled under the Americans with Disabilities Act, nor shown that he engaged in a "protected activity," we affirm the grant of summary judgment.

**I**

Plaintiff David Neely claims to have long suffered from sleeping problems, sometimes getting only two to three hours of restful sleep each night. R. 26-1, Neely Aff. at 1, PID 262.

From 2002 to 2005, Neely apparently sought treatment for his sleeping problems from Dr. Shah, his family physician. *Id.* From 2009 to 2012, Neely sought treatment from Dr. Janette Froelich, M.D., another family physician. According to Neely's affidavit, Dr. Froelich prescribed Concerta partially in response to his sleeping difficulties. Dr. Froelich also prescribed Synthroid for hypothyroidism and to enhance Neely's energy level. *Id.*

Neither Dr. Shah nor Dr. Froelich ever diagnosed Neely with sleep apnea or any related sleeping disorder. However, in 2010, Froelich referred Neely to Dr. George Burton, M.D., a specialist at Kettering Medical Center who treats patients with sleeping issues. *Id.* Dr. Burton evaluated Neely and wrote to Dr. Froelich, stating that Neely "has absolutely horrible sleep hygiene, sleeping basically when he feels like it, but usually going to bed around 3 a.m. and sleeping through until 1 p.m." R. 23-9, Burton Letter at 1, PID 218. His letter continued, "It is clear that [Neely] is poorly disciplined in both his sleep hygiene, and his taking of medication, as well as in his food consumption." *Id.* at 220. Declining to make a diagnosis without additional testing, Dr. Burton noted that his "preliminary impressions" were that Neely "has poor sleep hygiene, insufficient sleep syndrome, and probable obstructive sleep apnea." *Id.* at 222. Dr. Burton then recommended a "free T4 and TSH study, as well as a polysomnogram, and [maintaining] a sleep log." *Id.* The record indicates that Neely declined Dr. Burton's recommended tests, preventing the doctor's "preliminary impressions" from maturing into a diagnosis.

Nearly twenty months later, in December of 2011, Benchmark Family Services ("Benchmark") hired Neely as a Support Specialist. R. 26-1, Neely Aff. at 2, PID 263. Neely was apparently treating his sleeping problems by taking undisclosed supplements "and drinking lots of coffee daily." *Id.* Within two weeks, Neely was promoted to Support Administrator

where his job duties included "manag[ing] support operations and support specialist[s]" and reporting directly to the Chief Information Officer. *Id.* His transition to Support Administrator did not include an increase in compensation or benefits. *Id.*

Shortly after naming Neely a Support Administrator, Benchmark began to take serious issue with Neely's performance in the office and on the job. R. 23-15, Hanrahan Aff. at 2, PID 236. His supervisor noted that he was struggling with technical aspects of the job, including "being unable to remember the differences between the various companies supported by the IT Department," understanding the "proper procedure when it came to using Helpdesk," and "forget[ting] the difference between the various domains" he was required to support. *Id.* Neely also struggled with general job performance and attitude. Benchmark complained that Neely actively avoided new IT help tickets, passed work to his supervisors without first attempting to correct end user problems, and had a work order response time that "was close to double that of several of the other staff members." *Id.* At least one employee also claimed that Neely was often seen playing on his phone or doing other non-work related things instead of auditing IT tickets.

Benchmark also was disappointed with Neely's "almost daily falling asleep at work." R. 23-15, Hanrahan Aff. at 2, PID 236. Neely mentioned to his supervisors that he had a "sleeping disorder which caused [him] to suffer fatigue and experience micro sleeps."[1] R. 26-1, Neely Aff. at 2, PID 263. One supervisor suggested Neely take supplements "so it's not an issue." *Id.* After Neely explained that he was trying to treat his sleeping problems himself, the supervisor responded, "Well, try to hurry up with that." *Id.* Over the course of several months, Neely's supervisors discussed these issues with him "numerous times," but Neely never sought

---

[1] Neely characterizes his "micro sleeps" as a "few seconds of time during the day in which he dozes off or shuts his eyes." Neely Br. at 3.

medical treatment for his sleep problems during his entire employment with Benchmark. *Id.*; R. 23-10, Answer to Admission Request, PID 224.

Benchmark's dissatisfaction with Neely's performance resulted in a verbal reprimand on May 25, 2012. The reprimand contained various performance issues already voiced by his supervisors, noting again that Neely had the longest average response time of the entire IT team and that he "continually [fell] asleep during the workday, trainings and meetings." R. 23-6, Verbal Reprimand at 2, PID 211. The reprimand also informed Neely that he was being returned to the Support Specialist position.

The following week, Neely spoke to his supervisor Jason Hanrahan about the verbal reprimand and demotion to Support Specialist. R. 26-1, Neely Aff. at 3, PID 264. Neely expressed his disappointment with the reprimand, stating he did not "feel it was fair to use [his] sleeping issues against [him] like that." *Id.* He alleges that Hanrahan "rolled his eyes" and agreed with the contents of the verbal reprimand. The week following his demotion, Neely's co-workers described his attitude as poor with regard to his supervisors and other staff members. On June 1, 2012, Benchmark terminated Neely's employment. Neely filed a complaint with the EEOC and received a right to sue letter on September 18, 2013.

Neely then initiated this lawsuit, bringing state and federal claims of disability discrimination and retaliation, and also asserting state law claims for wrongful discharge and intentional infliction of emotional distress. Analyzing his state and federal claims together, the district court concluded that Neely was not "disabled" within the meaning of the ADA and failed to establish a prima facie case for retaliation. The district court then granted Benchmark's motion for summary judgment on all of Neely's claims. Neely appeals his summary dismissal of discriminatory discharge, retaliation, and intentional infliction of emotional distress claims.

## II

We review a grant of summary judgment de novo. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). At the summary judgment stage, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc). However, the non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Therefore, summary judgment is proper where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III

Neely's claims of discriminatory discharge arise under the Americans with Disabilities Act (ADA), 104 Stat. 327, 42 U.S.C. § 12112 *et seq*., and the Ohio Civil Rights Act, Ohio Rev. Code § 4112.02 *et seq*. We may analyze them together here. *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012); *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004).

The ADA provides that no covered entity shall discriminate against a qualified individual on the basis of a disability. 42 U.S.C. § 12112(a). A successful showing of discriminatory discharge under the ADA requires a plaintiff to show that: "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse

employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)). The district court granted summary judgment on Neely's ADA claim because he failed to raise a genuine issue of material fact as to whether he qualified as "disabled" within the meaning of the ADA.

The ADA defines "disability" as: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual,"[2] (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C). Because Neely failed to put forward evidence that would allow any rational trier of fact to conclude he has a disability, he is not "disabled" under the ADA and we affirm the grant of summary judgment on Neely's discriminatory discharge claims.

### A. Physical or Mental Impairment that Substantially Limits One or More Major Life Activities.

Under the first prong of the ADA's definition of "disability," Neely must show not only that he was disabled—i.e. suffered "a physical or mental impairment"—but also that such an "impairment [] substantially limit[ed] one or more major life activities." 42 U.S.C. § 12102(1)(A).

*Physical or Mental Impairment*. Neely is unable to establish that he suffered from a "physical or mental impairment" that caused his sleeping problems. In fact, the two instances he cites in support of his purported disability work to undermine his claims. The first instance arises from Neely's office visit to Dr. Froelich, his regularly treating physician. Neely

---

[2] This definition considers "major life activities" to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing," among others. 42 U.S.C. § 12102(2)(A).

complained of sleep apnea among other things. Although Dr. Froelich wrote down Neely's complaints regarding his reported symptoms, he did not diagnose him with sleep apnea. Instead, Dr. Froelich referred Neely to Dr. Burton, a specialist who deals with sleep issues including sleep apnea. R. 23-8, Froelich Report, PID 217. The fact that Dr. Froelich's report simply memorialized Neely's complaints of insufficient sleep, "loud snoring," and "gasping at times" is insufficient to establish a genuine issue of material fact with respect to Neely's disability. *See Simpson v. Vanderbilt University*, 359 F. App'x 562, 567 (6th Cir. 2009) ("[U]ncorroborated testimony about [a plaintiff's] sleep habits is not enough to raise a genuine issue of material fact as to whether his sleep was substantially limited." (citing *Greathouse v. Westfall*, 212 F. App'x 379, 383 (6th Cir. 2006))).

The second mention of sleep apnea is recorded in a letter from Dr. Burton (the sleep specialist) to Dr. Froelich. Dr. Burton did not diagnose Neely with sleep apnea, but rather determined that Neely was "poorly disciplined in both his sleep hygiene, and his taking of medication, as well as in his food consumption." R. 23-9, Burton Letter, PID 220. Dr. Burton remarked that Neely "is usually in bed around 3 a.m. and he sleeps through until 1 p.m.," again characterizing Neely as having "absolutely horrible sleep hygiene, sleeping basically when he feels like it." *Id.* at 218. He then proceeded to exclude numerous physiological causes of Neely's sleep issues, including orthopnea, paroxysmal nocturnal dyspnea, insomnia, parasomnia, restless leg syndrome, and narcolepsy, among others. *Id.* at 218, 220. Dr. Burton did not foreclose a future diagnosis of sleep apnea, concluding his letter with the "preliminary impressions" that Neely's sleep problems were caused by "poor sleep hygiene, insufficient sleep

syndrome, and probable obstructive sleep apnea."[3] *Id.* at 222. But, crucially, Dr. Burton did not

diagnose Neely with sleep apnea. He merely ordered free additional tests, writing to Dr. Froelich

that "[w]e will get this all together and I will be back to you again soon." *Id.* Tellingly, Neely

declined to follow up with Dr. Burton's recommended additional testing and no other evidence

in the record substantiates his claim that he was ever diagnosed with sleep apnea.

Neely's bare assertions of sleep apnea, without any supporting medical evidence, cannot

establish a "physical or mental impairment" within the meaning of the ADA. *See Simpson*,

359 F. App'x at 567. Perhaps realizing as much, Neely attempts to side-step our precedent by

relying on *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002) (*overturned

by U.S. Pub. L. 110-325 (2009)*), which states that "the ADA requires [plaintiffs] to prove a

disability by offering evidence . . . *in terms of their own experience*[.]" But this reliance is

misguided. *Toyota* refers to a plaintiff's "own experience" in determining whether a major life

activity is affected—not whether his own experience, without more, is sufficient to establish a

disability within the meaning of the ADA. Because Neely fails to carry his burden of

establishing that he suffers a "mental or physical impairment," he has not shown that he is

disabled under the first prong of the definition.

*Substantially Limits A Major Life Activity.* Even if Neely were physically or mentally

impaired, he fails to show that his sleep problems substantially limited a major life activity.

Before the district court, Neely never asserted exactly *which* major life activity was substantially

limited by his sleep problems. His reply brief, however, does mention that his "sleep apnea

substantially affect[s] . . . sleeping and breathing." Neely Reply Br. at 1. Our circuit precedent

---

[3] These "preliminary impressions" are just that—preliminary impressions—and are inconsistent with Neely's appellate arguments overstating that he was "diagnosed with obstructive sleep apnea [by Dr. Burton] in April 2010." Neely Br. at 14.

has consistently held that sleeping problems like Neely's—"getting only 2 to 3 hours of restful sleep per night, falling into micro sleeps during the day . . . snoring, and extreme difficulty breathing while sleeping," Neely Br. at 14—fail to constitute a substantial limitation on a major life activity. *See Simpson*, 359 F. App'x at 567 (6th Cir. 2009) (holding that the plaintiff's testimony that "he was sleeping three or fewer hours five days per week" did not constitute a substantial limitation); *Boerst v. Gen. Mills Operations*, 25 F. App'x 403, 407 (6th Cir. 2002) (holding that sleeping between two and four hours per night, "while inconvenient, simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation"); *see also Jones v. AKKO Fastener, Inc.,* No. 1:09-CV-286, 2010 WL 3365940, at *11 (S.D. Ohio Aug. 23, 2010) (accepting that the plaintiff suffered from sleep apnea, but noting that he "has evidently been able to function with sleep apnea since 1998. While sleep apnea may well constitute a disability for some individuals, [the plaintiff's] descriptions of the effects of his condition are insufficient to establish the level of severity required to qualify as a 'substantial limitation' on major life activities").

Recognizing that his showing of a sleep disability does not measure up under our existing precedent, Neely tries to skirt these cases by emphasizing the relaxed standard for "substantial limitation" in the ADA Amendments Act of 2008 ("2008 Amendments"). U.S. Pub. L. 110-325. Fully recognizing that "the term 'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the [2008 Amendments]," 29 C.F.R. § 1630.2(j)(1)(iv), we still conclude that Neely fails to carry his burden of establishing that his sleep problems were a "substantial limitation" on a major life activity.

Neely does not articulate why the reasoning in *Simpson* and *Boerst* should not survive the 2008 Amendments, nor does he suggest that the plaintiffs in those cases (who appear to have comparable or even more severe sleeping issues) would have established "substantial limitations" under the relaxed standard.[4] Though the 2008 Amendments undoubtedly eased the burden required for plaintiffs to establish disability, we note that Congress expressly chose to retain the "substantially limits" modifier for "one or more major life activities." *See* 42 U.S.C. § 12102(1)(A); ADA Amendments Act of 2008, PL 110–325, September 25, 2008, 122 Stat 3553. A lesser burden is a burden nonetheless, and one that Neely has failed to carry. We agree with the district court that, "[w]hile a diagnosis might not be absolutely necessary [to establish a record of impairment], in this situation, some diagnosis must explain the duration or severity of the impairment." R. 23, Dist. Ct. Opn. at 14, PID 368. We therefore hold that Neely's self-described symptoms to his physicians, without corroborating medical evidence or any diagnosis are insufficient to establish a substantial limitation on a major life activity. Neely therefore has not shown he is qualified as disabled under the first prong of the ADA's definition.

### B. Record of Impairment

Neely also claims that he is disabled under the "record of impairment" prong of the ADA's definition. 42 U.S.C. § 12102(1)(B). A plaintiff has a "record of impairment" if he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Spence v. Donahoe*, 515 F. App'x 561, 570 (6th Cir. 2013) (citing *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 339 (6th Cir. 2002)); 29 C.F.R. § 1630.2(k) (2012). We have analyzed this prong to include "people who have

---

[4] Neely counters that his sleeping difficulties mirror the plaintiff's in *Marziale v. BP Products N. America, Inc.*, No. 1:05CV741, 2007 WL 4224367, *7 (S.D. Ohio Nov. 27, 2007) (determining that plaintiff presented sufficient evidence to show she is substantially limited in the major life activity of sleeping). However, the plaintiff in *Marziale* had medical testimony from her treating physician that spoke to the physiological cause of her sleeping problems—her back condition, for which she received surgery. *Id.* at *7.

recovered from previously disabling conditions . . . but who may remain vulnerable to the fears and stereotypes of their employers." *Donahoe*, 515 F. App'x at 570 (internal quotation marks omitted). To establish a "record of disability," a "plaintiff only needs to show that 'at some point in the past' he had [a substantially limiting impairment]." *Id.* (internal quotation marks omitted).

Neely has failed to establish a "record of impairment." As discussed above, Neely's uncorroborated statements to Dr. Froelich and Dr. Burton's "preliminary impressions" are insufficient to establish "a history of . . . a mental or physical impairment that substantially limits one or more major life activities." *Id.* As Neely did not show that he is disabled, his claim that he has a record of impairment—without any additional evidentiary basis—is without merit. We again note that Neely chose not to follow up with Dr. Burton's additional tests that could conceivably have contributed to a "record of impairment."

## C. Regarded as Having an Impairment

Neely finally contends that he is disabled under the third prong of the ADA because he was "regarded as having [] an impairment" by his employer. 42 U.S.C. § 12102(1)(C). Before the 2008 Amendments, the Supreme Court interpreted the ADA to consider a person disabled under the third prong only if a covered entity mistakenly believed that the individual had a physical impairment that was substantially limiting, or mistakenly believed that an actual, nonlimiting impairment was substantially limiting. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999), *overturned* by U.S. Pub. L. 110-325 (2009). In passing the 2008 Amendments, Congress liberalized the standard, redefining "regarded as having an impairment" only to require that a defendant took a prohibited action based on a perceived impairment, regardless of whether the employer thought the impairment was substantially limiting. 42 U.S.C. § 12102(3)(A). We note, however, that it is not enough that the employer is simply aware of a plaintiff's

symptoms; rather the plaintiff must show that the employer regarded the individual as "impaired" within the meaning of the ADA. *See Simpson*, 359 F. App'x at 568.

Neely cannot establish that he was "regarded as having [] an impairment," even under the relaxed standards of the 2008 Amendments. Neely's claim that his employers regarded him as impaired is first hampered by his own admission that his sleep issues did not affect his ability to work. *See* 42 U.S.C. § 12102(3)(B) (the ["regarded as" prong] shall not apply to impairments that are transitory and *minor*" (emphasis added)). For instance, Dr. Burton's report, Neely's proffered evidence to establish his disability, states that Neely "often is sleepy during the day but it does not interfere with his work." R. 23-9, Dr. Burton Letter, PID 220. Neely's complaint before the district court also acknowledges that his "sleeping disorder did not prevent him from doing his job in a competent, professional manner." R. 3, Complaint at 2, PID 17. We agree with the district court that Neely paints an inconsistent picture by "both asserting that his employer was dismissive of his alleged disability and that he was so affected by it that his employer regarded him as disabled." R. 28, Dist. Ct. Opn. at 15, PID 369.

The facts construed in a light most favorable to Neely—that Benchmark suggested he take supplements "so [his sleeping problems are] not an issue," telling Neely to "hurry up" with his self-medication for his sleep problems, and a supervisor "rolling [his] eyes when Mr. Neely tried to explain his sleep disorder," Neely Br. at 17—indicate that Benchmark was aware of Neely's self-described sleep problems, but do not suggest that Benchmark regarded him as physiologically "impaired" within the meaning of the ADA. *See Simpson*, 359 F. App'x at 568 ("The facts construed in the light most favorable to [the plaintiff] support a finding only that [defendant] knew that [plaintiff] had certain health problems, but not that [defendant] regarded him as impaired."); *see also Bailey v. Real Time Staffing Servs., Inc.*, 543 F. App'x 520, 523 (6th

Cir. 2013) (expressing "doubt," even under the "relaxed standard" of the 2008 Amendments, that a plaintiff who merely informs an employer of a medical condition establishes a perceived impairment such that the plaintiff qualifies as "disabled" under the ADA).

Finally, we note that the "regarded as" prong "is intended to allow individuals to be judged according to their actual capacities, rather than through a scrim of 'myths, fears, and stereotypes' accruing around a perceived impairment." *Mahon v. Crowell*, 295 F.3d 585, 592 (6th Cir. 2002). Benchmark's comments about Neely's purported sleep disability do not reflect the myths or stereotypes regarding disabilities that the ADA is designed to combat, nor do they suggest discrimination or bias arising from a perceived disability. Accordingly, Neely's discriminatory discharge claim must fail as a matter of law because he is unable to present any evidence that could show he was disabled within the meaning of the ADA.

## IV

The district court also granted summary judgment on Neely's retaliation claims. As with Neely's disability discrimination claims, his federal and state law retaliation claims may be analyzed together. *Garner v. Cuyahoga Cty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009) (citing *Baker v. Buschman*, 127 Ohio App.3d 561, 713 N.E.2d 487, 491 (1998)). The ADA provides:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). To establish a prima facie claim of retaliation, Neely must show that (1) he "engaged in a protected activity; (2) []he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action."

*Johnson v. Univ. Hosps. Physician Servs.*, 617 F. App'x 487, 492 (6th Cir. 2015) (citing *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007)).

As discussed above, Neely does not qualify as disabled under the ADA. However, a "plaintiff may prevail on a disability-retaliation claim even if the underlying claim of disability fails." *Bryson*, 498 F.3d at 577 (6th Cir. 2007) (collecting cases). As the district court aptly summarized, however, the cases *Bryson* cites in support of an independent disability retaliation claim (without establishing disability) primarily center on "a good faith belief that [a] requested accommodation was appropriate." *Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003) (internal quotation marks and citations omitted); *see also Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 907–08 (8th Cir. 2010) (expressing skepticism that making a request for an accommodation "fits within the literal language" of 42 U.S.C. § 12203(a), but considering itself bound by its prior interpretation).

The parties do not dispute that Neely never requested an accommodation nor filed a formal charge against his supervisor before he was terminated. Instead, Neely's purported protected activity was "complaining to Hanrahan [his supervisor] that it was unfair to use his sleeping disorder against him." Neely Br. at 24. Nonetheless, Neely asks us to extend *Bryson* to cover his circumstances—that is, permit an individual who is not disabled under the ADA, who never requested an accommodation, and who never filed a formal charge while employed to be deemed to have engaged in a "protected activity" simply for discussing his sleep issues with his employer. We decline to do so here. *See E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 972 (8th Cir. 2014) (holding that because plaintiff's complaints regarding his left shoulder and the potential need for surgery were not a request for an accommodation, plaintiff had not engaged in a statutorily protected activity and did not establish a prima facie case of retaliation).

**V**

Neely's last argument is that the district court erred in granting summary judgment on his intentional infliction of emotional distress claim. Liability for emotional distress under Ohio law is only proper where an "actor's conduct was extreme and outrageous . . . [and is] considered as utterly intolerable in a civilized community." *Thomas v. Progressive Cas. Ins. Co.*, 969 N.E.2d 1284, 1287 (Ohio Ct. App. 2011). "[A]n employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999). Neely offers no evidence that Benchmark engaged in conduct that could be characterized as "extreme and outrageous." We therefore affirm the grant of summary judgment on Neely's emotional distress claim.

**VI**

For the reasons above, we AFFIRM the district court's grant of summary judgment.