**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0185n.06

No. 18-5699

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JONATHAN C. BAUM, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | **FILED** |
| v. | ) | Apr 11, 2019 |
| | ) | DEBORAH S. HUNT, Clerk |
| METRO RESTORATION SERVICES, INC., | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

GRIFFIN, Circuit Judge.

A few months after Plaintiff Jonathan Baum began having heart problems, his employer, Defendant Metro Restoration Services, fired him. Not only that, Metro's owner told him he was losing his job because of his health issues. So Baum sued for disability discrimination, and the district court granted summary judgment in Metro's favor after concluding that Baum couldn't establish he was disabled. We agree that Baum couldn't show he was actually disabled, but we conclude that the record establishes a genuine issue of material fact over whether Metro perceived him to be disabled. Accordingly, we affirm in part and reverse in part.

I.

Metro repairs property damage after catastrophic events such as storms and fires. In 2013, the company hired Baum as a scheduler. As the job title suggests, Baum determined which of Metro's work crews would go to which job sites and when they would go.

In late 2014, Baum began having heart problems. Over the course of several months, he went to the emergency room fearing he had had a heart attack; had a CAT scan; had a heart catheter implanted; had an echocardiogram (which outlines the heart's movement using high-frequency sound waves); and wore a heart monitor for more than a month. During this time, he occasionally missed work for medical tests and treatments. He also worked remotely sometimes. And he kept his boss and owner of Metro, Patrick Cahill, informed of his medical issues.

One weekend in the spring of 2015, severe weather hit. Baum worked remotely to coordinate Metro's crews. The next week, Cahill went to Baum's home and fired him. During their conversation, Cahill said he was firing Baum "due to [Baum's] health issues and doctors' appointments."

Baum then sued Metro in state court for disability discrimination under both the Americans with Disabilities Act and Kentucky law. Metro removed the case to federal court.

During discovery, Baum disclosed his doctor as a potential lay witness but not as an expert witness. After discovery closed, Metro moved for summary judgment. The district court granted the motion in part, ruling that Metro was entitled to judgment as a matter of law on Baum's claims under Kentucky law and a portion of Baum's ADA claim in which he alleged he was disabled because Metro, through Cahill, "regarded [him] as" disabled. That left a second portion of Baum's ADA claim in which he alleged he was actually disabled.

Metro later filed a second summary-judgment motion on this portion of Baum's claim. The district court granted the motion, ruling that Baum couldn't meet his burden without expert testimony—expert testimony he didn't have because he'd failed to disclose his doctor as an expert witness.

Baum now appeals the entry of summary judgment on his ADA claims.

II.

We review the district court's decision de novo. *SEC v. Zada*, 787 F.3d 375, 380 (6th Cir. 2015). Summary judgment is appropriate if there is no genuine dispute over any material fact. *Id.*

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). This includes firing an employee. *Id.* Proof of discrimination comes in one of two ways: by direct evidence or by circumstantial evidence. And the method of proof determines which analytical framework applies. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92 (6th Cir. 2016).

Here, Cahill's statement that he was firing Baum because of Baum's health issues was direct evidence of discrimination, so Baum must show two things:

1. He has a disability; and
2. He is otherwise qualified for the job despite the disability:
    a. Without accommodation;
    b. With an alleged "essential" job requirement eliminated; or
    c. With a proposed reasonable accommodation.

*Id.* at 891. In its appellate briefing, Metro didn't contest Baum's qualification for the job without accommodation. At oral argument, however, Metro claimed for the first time that Baum was qualified for the job when he could make it to work but unqualified when he missed time to attend medical appointments. By failing to raise the argument earlier, Metro forfeited it. *United States ex rel. Marlar v. BWXTY-12, L.L.C.*, 525 F.3d 439, 450 n.6 (6th Cir. 2008). Thus, we will focus only on whether Baum has created a genuine issue of material fact over whether he was disabled.

Under the ADA, "disability" means:

1. A physical or mental impairment that substantially limits one or more major life activities;
2. A record of such an impairment; or
3. Being regarded as having such an impairment.

42 U.S.C. § 12102(1). Baum has limited his case to the first and third types of disability, and for the first he claims only a physical impairment, not a mental one. Thus, we must determine whether Baum created a genuine issue of material fact over whether (1) he had a physical impairment that substantially limited one or more major life activities or (2) Metro regarded him as having such an impairment. For simplicity, we will refer to the first theory as an "actual disability" and the second theory as a "perceived disability."

A.

We start with Baum's claim of an actual disability. It contains two elements: (1) a physical impairment (2) that substantially limits one or more major life activities (which Baum has limited to his cardiovascular and circulatory function). 42 U.S.C. § 12102(1)(A). Metro doesn't contest the first element, and various medical records show that Baum has several heart conditions. So the only disputed issue is whether Baum can show that his impairments substantially limited his cardiovascular and circulatory functions.

Baum argues that he can. For support, he points to the ADA Amendments Act, where Congress said that "whether an individual's impairment is a disability under the ADA should not demand extensive analysis." ADA Amendments Act of 2008, Pub L. No. 110-325 § 2(b)(5), 122 Stat. 3553. He also cites an implementing regulation stating that the phrase "substantially limits" warrants broad construction and "is not meant to be a demanding standard," 29 C.F.R. § 1630.2(j)(1)(i), and that the substantial-limitation inquiry "usually will not require scientific, medical, or statistical analysis." 29 C.F.R. § 1630.2(j)(1)(v). Read together, Baum contends, these provisions set a low bar for proving an actual disability.

That they do. But it's a bar Baum can't clear without expert testimony. That's because his impairments, unlike more common or less complicated ones, require medical knowledge to

understand. His medical records contain diagnoses such as "AV block, Mobitz 1" and "Bradycardia"—words that rarely appear outside the medical profession. And although some of Baum's other diagnoses include terms and phrases a lay person might have heard before—palpitations; right heart failure; right ventricular enlargement—they have corresponding explanations packed with medical jargon. Baum's diagnosis for heart failure, for example, says that an "RHC" (what we take to mean right-heart catheterization) showed "no evidence of constrictive pericarditis." No lay person would know what that means.

So do Baum's impairments limit his cardiovascular and circulatory functions? They might. But to conclude that they did, a jury would need to understand them—how they function, and what that means for Baum. And to understand them, jurors would need an opinion from someone with "scientific, technical, or other specialized knowledge": expert testimony. Fed. R. Evid. 702.

Because Baum failed to disclose his doctor—or anyone else with specialized medical knowledge—as an expert witness, he lacks the evidence he needs. And without that evidence, he hasn't created a factual issue over whether he is actually disabled. The district court therefore correctly granted summary judgment on this claim.

Baum also asks for leave to amend his expert disclosures. But his request is perfunctory, and thus abandoned. *See Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014). To secure amendment of a scheduling order, a party must show "good cause." *See Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). And we review a district court's refusal to amend a scheduling order for an abuse of discretion. *Id.* at 909. Here, Baum neither cites the good-cause standard nor argues that he meets it. He also never claims that the district court abused its discretion or attempts to explain why that is so. We are "not in the business of developing parties' arguments, and we decline to do so here." *My Imagination, LLC v. M.Z. Berger & Co.*, 726 F.

App'x 272, 276 (6th Cir. 2018) (citing *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1057 (6th Cir. 2015)).

B.

Next, we address Baum's claim of a perceived disability. To be "regarded as" disabled, he must show that he was fired "because of an actual or perceived physical . . . impairment." 42 U.S.C. § 12102(3)(A). Unlike with his other claim, Baum need not prove a limitation of a major life activity. *Id.*

Baum argues that a jury could find that Metro fired him because Cahill thought Baum was disabled. For support, he relies on Cahill's knowledge of Baum's catheter, CAT scan, trip to the ER, and period where he wore a heart monitor. Baum also points to Cahill's stated reason for firing him: his "health issues and doctor's appointments."

Metro would have us ignore that evidence. Baum lost his job, the company says, because of his "excessive absenteeism and failure to perform his job duties." Metro emphasizes that Baum didn't go into the office about one-third of his final three months of employment, but the company never mentions Baum's frequent remote work and never explains which job duties he failed to perform. Put differently, Metro asks us to view the facts in the light most favorable to the company, not Baum.

This we cannot do. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). Cahill's word versus Baum's creates a classic credibility dispute, and "determining the credibility of witnesses is a task for the jury[.]" *United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004). To be sure, and as the district court correctly noted, Cahill's knowledge of Baum's medical issues—alone—is insufficient to carry the day. *See Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 568 (6th Cir. 2009); *see also Neely v. Benchmark Family Servs.*, 640 F. App'x 429, 435 (6th Cir. 2016).

But Baum has more—he has Cahill's stated reason for firing him: his "health issues and doctors' appointments." That statement is what creates a factual dispute and makes it material. Giving Baum the benefit of the doubt, a jury could find that Cahill meant what he said. And if a jury so found, it could also find that Cahill perceived Baum to have a physical impairment and fired Baum because of that perception.

## III.

For these reasons, we affirm the grant of summary judgment in Metro's favor on Baum's claim of an actual disability and reverse the grant of summary judgment in Metro's favor on Baum's claim of a perceived disability.